

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SAFIA COBEY, )
)
    Plaintiff, )
)
v. ) Civil Action No.: 1:08-cv-406
)
)
PETE GEREN, Secretary of the Army, )
)
    Defendant. )

**MEMORANDUM OPINION**

    Before the Court is Defendant Pete Geren's Motion for Summary Judgment (Dkt. No. 34). After review of the motion and the briefs in support and in opposition, the Court finds that there are no genuine issues of material fact and that therefore pursuant to Fed. R. Civ. P. 56(c) Defendant is entitled to judgment as a matter of law.

Background

    Plaintiff Safia Cobey is a Korean female who was employed as a fabric worker in the Directorate of Public Works and Logistics, Services Division, Central Issue Facility ("CIF") at Fort Myer, Virginia. Plaintiff began employment in that position in July 2003. Her last day of employment was April 21, 2008.

    Plaintiff's duties as a fabric worker involved "[p]erforming a variety of minor alterations and repairs on men's and women's military tailored uniforms . . ." DEX 4 [WG-4 Fabric Worker Position Description]. The Position description for the job that Plaintiff held, a WG-3105-04 Fabric Worker, describes the physical demands for the job as follows: "PHYSICAL EFFORT: The work requires standing at work tables to mark, measure and cut materials; stooping, bending

1

and kneeling to fit individuals; and sitting for long periods to machine and hand sew the uniforms. Continued use of arms, hands and fingers are required to position the clothing and use various hand and machine tools." *Id.*

Esther Hernandez ("Hernandez") was Plaintiff's first-level supervisor. At all times relevant Hernandez was a GS-09 Inventory Management Specialist in the CIF. At all times relevant Jeff Westerman ("Westerman") was the GS-14 Director of Logistics. Westerman was Hernandez's immediate supervisor and Plaintiff's second-level supervisor.

On or around March 14, 2006, Plaintiff allegedly suffered an on-the-job injury while sorting laundry. According to Plaintiff she was seen and treated by Dr. Cho who placed her on work restrictions and/or light duty based upon her injuries. When Plaintiff returned to work on or around March 16, 2006, she presented Hernandez with a doctor's note dated March 15, 2006. DEX 7. According to Hernandez she was unable to read the doctor's note, and the note did not indicate the length of Plaintiff's limitations. In Hernandez's deposition, she stated that Westerman directed her to ask Plaintiff to go back to the doctor and ask for a letter detailing Plaintiff's diagnosis, precise limitations, length of the limitation, and the physician's name in a legible form. Hernandez testified that on March 17, 2006 Plaintiff provided Hernandez with a new, undated note from Dr. Charles Cho. DEX 8. The note indicated that Plaintiff sprained her lumbar and cervical areas of her back and was restricted with regard to work for the next three weeks. Plaintiff was specifically restricted from bending at the hips more than thirty degrees, pushing, pulling, lifting more than five pounds, or standing more than ten minutes at a time. Plaintiff alleges that despite receiving sufficient medical documentation, Hernandez lingered for a week before placing Plaintiff on light duty. Plaintiff claims that she was not placed on light duty until March 23, 2006, while Hernandez states that Plaintiff was placed on light duty on or

about March 17, 2006. On March 22, 2006, Plaintiff had an appointment with Dr. John Ramler of the Family Practice Woodbridge Clinic regarding her back pain. DEX 12 [Health Record for March 22, 2006 Doctor's Appointment]. Plaintiff's medical records indicate that she was "Released w/o Limitations" and was to follow-up as needed.

On or about April 5, 2006, Plaintiff allegedly was involved in a motor vehicle accident. She was out of work from April 6 until April 18. During this time Plaintiff began seeing Dr. Scott Doroski, Chiropractor for her injuries. Plaintiff's first visit to Dr. Doroski was on April 6, 2006. During that visit Plaintiff informed Dr. Doroski that she was experiencing neck pain, upper back pain, right upper shoulder pain, low back pain, and right low back pain. DEX 13 at 1; DEX 14 at 7. According to Dr. Doroski's written Initial Report regarding Plaintiff's visit on that occasion, Plaintiff reported that "[b]efore this accident [Plaintiff] did not have any of the symptoms she [was] feeling" after the accident. DEX 13 at 1-2; DEX 14 at 11. Dr. Doroski also noted that Plaintiff had been treated for injuries suffered from a motor vehicle accident in 2004, but those injuries did not require ongoing care and did not contribute to her condition at that time. DEX 13. Further, Dr. Doroski recorded that "[t]he remainder of her past medical history and her family history are noncontributory to these injuries." At that time, Dr. Doroski recorded Plaintiff's prognosis for recovery time as "slow," and her overall prognosis as "favorable." DEX 13; DEX 14 at 11. According to Dr. Doroski, "a favorable prognosis would mean nothing was broken, probably one of those things where it should make a full recovery." DEX 14 at 11-12. Dr. Doroski's notes for Plaintiff's follow-up visits indicate that between April 7, 2006 and April 20, 2006, Plaintiff's condition was improving. DEX 14 at 18-19; DEX 15 at 1-2.

Plaintiff returned to work on April 19, 2006. She provided Hernandez with a medical certificate from her chiropractor that was dated April 15, 2006. DEX 9 [Medical

3

Clearance/Light Duty form from Doroski Chiropractic, dated April 15, 2006]. The certificate stated that Plaintiff's "Duration of Total Disability" was from April 6, 2006 to April 18, 2006. The note also listed restrictions on the types of activities that Plaintiff could perform. Specifically, Plaintiff could not lift or carry more than ten pounds, kneel, stoop, twist, reach above her shoulders, or climb ladders. Additionally, Plaintiff was moderately restricted in activities including carrying objects up to ten pounds, sitting, standing, walking, climbing stairs, bending, pushing, pulling, and simple grasping. Handwritten comments on the form stated that Plaintiff should not perform activities in which she was moderately restricted for periods longer than thirty minutes. Plaintiff alleges that when she returned to work on April 19, 2006 Hernandez refused to comply with the restrictions listed on the form from Dr. Doroski. On April 21, 2006 Plaintiff went to the hospital in an ambulance. On April 24, 2006 Plaintiff went to see Dr. Doroski again regarding her condition. Dr. Doroski's notes do not mention Plaintiff informing him that she went to the hospital on April 21, 2006, and Dr. Doroski stated in his deposition that he did not believe he received any medical documentation regarding Plaintiff's trip to the hospital on April 21, 2006. DEX 14 at 21-23. April 21, 2006 was the last day Plaintiff went to work. On May 18, 2006 Plaintiff sought treatment from Dr. Doroski for the final time. At this time, Dr. Doroski recorded that Plaintiff had "returned her [Activities of Daily Living] too [*sic*] normal, but notes occasional pain on the right side of her neck at the end of a long day." DEX 16. Dr. Doroski also noted that Plaintiff "currently ranks her pain as a one out of ten with ten being unbearable pain." *Id.* His assessment of Plaintiff's condition was that her difficulties with range of motion, muscle spasms, and tenderness had all "greatly improved," DEX 15, and that in his opinion, Plaintiff had reached maximum medical improvement." DEX 16.

## Procedural History

On June 23, 2006 Plaintiff filed a formal EEO complaint with the Department of the Army. On January 28, 2008 Plaintiff received the Department's final action. Plaintiff timely appealed the final action to this Court on April 28, 2008. In her federal complaint, Plaintiff alleged the following eight counts: (1) discrimination on the basis of race in violation of Title VII; (2) discrimination on the basis of national origin in violation of Title VII; (3) discrimination on the basis of disability in violation of Title VII; (4) Intentional Infliction of Emotional Distress; (5) Negligent Supervision; (6) Equitable Relief; (7) Negligence; and (8) discrimination based on the Rehabilitation Act of 1973. Defendant filed its Answer on June 26, 2008. In response to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment filed on August 6, 2008, Plaintiff voluntarily dismissed Counts 3 though 7. On November 12, 2008, the Court dismissed Counts 1 though 7. After the close of discovery, Defendant filed its Motion for Summary Judgment as to the single remaining count, Count 8, on December 15, 2009. A hearing was held on the Motion for Summary Judgment on January 29, 2010. The Court took the motion under advisement and now issues this opinion.

## Standard of Review

A Court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). As here, where the non-moving party will bear the burden of proof at trial, the moving party's obligation in the summary judgment context is satisfied upon a showing that there is a lack of evidence to carry the non-moving party's burden on an essential element of that party's cause of

action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393-94 (4th Cir. 1994). The non-moving party must go beyond the pleadings and mere allegations to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 324.

Discussion

In the remaining count of Plaintiff's complaint, she alleges that her supervisor violated the Rehabilitation Act by denying Plaintiff reasonable accommodations after she suffered an injury to her back. In order to establish a *prima facie* case for failure to accommodate under the Rehabilitation Act, a plaintiff must demonstrate that (1) she is an individual who has a disability within the meaning of the statute; (2) the employer had notice of the disability; (3) with reasonable accommodation she could perform the essential functions of the positions; and (3) the employer refused to make such accommodations. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001). A threshold requirement for coverage is that a plaintiff is disabled under the Act. 29 U.S.C. § 794(a); *Gupton v. Virginia*, 14 F.3d 203, 205 (4th Cir. 1994).

An individual is disabled under the Rehabilitation Act if she (1) has a physical or mental impairment that substantially limits one or more of her major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 29 U.S.C. § 705(20)(B); *Thomas v. Potter*, 2006 WL 2850623, *2, n.2 (E.D. Va. Oct. 3, 2006).[1] In her complaint, Plaintiff alleges that "[t]he medical documentation provided by the Plaintiff to the Defendant established that her physical condition was a disabling condition and affected, among other

---

[1] On September 25, 2008, the Americans with Disabilities Act Amendments Act ("ADAAA") came into effect. These Amendments took effect on January 1, 2009, but courts that have addressed the issue have held that the amendments do not apply retroactively. *See, e.g., E.E.O.C. v. Agro Distribution LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009); *Picard v. St. Tammy Parish Hosp.*, 611 F. Supp. 2d 608, 614 n.4 (E.D. La. 2009); *Rudolph v. U.S. Enrichment Corp., Inc.*, 2009 WL 111737, *6 (W.D. Ky. Jan. 15, 2009).

things, Plaintiff's ability to lift heavy items and to bend at the waist, lift anything above her shoulders." Plaintiff does not allege in her complaint that she had a record of such disability, or that her supervisory chain regarded her as having such a disability.

In determining whether an impairment substantially limits one or more of an individual's major life activities, courts consider the "nature and severity of the impairment," the "duration or expected duration of the impairment," and the "permanent or long term impact" of the impairment. *Pollard v. High's of Baltimore*, 281 F.3d 462, 467-68 (4th Cir. 2002) (internal quotations and citations omitted); 29 C.F.R. § 1630.2(j)(2). A temporary medical condition generally will not qualify as a disability under the Rehabilitation Act, even if it requires an extended leave or absence from work. *See Hockaday v. Brownlee*, 370 F. Supp. 2d 416, 423 (E.D. Va. 2004) (finding that an individual, who six months after surgery had not, and would never, fully recover his pre-injury physical condition, but whose condition was greatly improved, did not qualify as an individual with a disability as contemplated by the Rehabilitation Act); 29 C.F.R. §1630.2(j). The Fourth Circuit in *Pollard* made clear that "[a]n impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time." 281 F.3d at 468.

In this case, the Court finds that the record clearly demonstrates that Plaintiff did not have a permanent disability, and Plaintiff's employer had no reason to believe that Plaintiff was suffering from a permanent condition. There are two different injuries which Plaintiff allegedly suffered during the relevant time period. The first injury Plaintiff alleges was a workplace injury which occurred on or about March 14, 2006. Plaintiff submitted two doctor's notes regarding that injury. The first was dated March 15, 2006 and gave no information regarding Plaintiff's diagnosis, prognosis, or the expected duration of her condition. The second note diagnosed

7

Plaintiff as suffering from a lumbar and cervical sprain and indicated her limitations would persist "3 weeks, till re-evaluated by [Dr. Cho] or other physician." From this note Hernandez had no reason to believe that Plaintiff had a permanent injury, in fact, Hernandez had every reason to believe that Plaintiff's injury was temporary. When Plaintiff visited Dr. Ramler on March 22, 2006, she was "Released w/o Limitations" according to her medical records. Any injury Plaintiff may have suffered on March 14, 2006 was apparently healed by March 22 and thus was clearly temporary. Additionally, when Plaintiff sought treatment for injuries suffered from the car accident which she was allegedly involved in, Dr. Doroski, after consultation with Plaintiff, made clear that none of the symptoms which Plaintiff was suffering from were the result of previous injuries or past medical or family history. This is further evidence that the March 15, 2006 injury was temporary, and therefore would not qualify as a disability under the Rehabilitation Act.

Similarly, the injury which Plaintiff allegedly suffered as a result of the car accident she claims to have been involved in on April 5, 2006 also does not qualify as a disability under the Rehabilitation Act. When Dr. Doroski first examined Plaintiff after the car accident, he recorded Plaintiff's prognosis as favorable. In his deposition, Dr. Doroski clarified that "a favorable prognosis would mean nothing was broken, probably one of those things where it should make a full recovery." Additionally, Dr. Doroski's notes for Plaintiff indicate that between April 7, 2006 and April 20, 2006, Plaintiff's condition was improving. In *Pollard*, the Fourth Circuit stated, that "[d]octor's evaluations which indicate that an individual's impairment is improving are persuasive evidence that the impairment is expected to be only temporary." 281 F.3d at 469. Moreover, the Medical Clearance/Occupation Light Duty Form which Plaintiff presented to Hernandez on April 19 when Plaintiff returned to work makes clear that Plaintiff's injury was

temporary. The top of the document stated that Plaintiff's "Duration of Total Disability" was from April 6, 2006 to April 18, 2006. At the bottom of the form was a chart detailing that Plaintiff was not able to perform her job without restrictions. While the parties differ in their understanding about whether the restrictions applied only from April 6 until April 18 or whether they applied after April 18, the document clearly indicates the temporary nature of Plaintiff's injury. The Court finds no evidence that at the time Plaintiff returned to work on April 19, 2006, the period of time when she claims she was entitled to accommodations by her employer, that she had been diagnosed with a permanent disability. In fact, it is apparent to the Court that any injury she did have was temporary and had been diagnosed as so.

Lastly, the specific restrictions noted on the form by Dr. Doroski do not rise to the level of substantially limiting one or more of life's major activities. The abilities to lift a certain amount of weight, crawl, kneel, squat, or climb, have been held to not be major life activities. *Hockaday*, 370 F. Supp. 2d at 423. "When the major life activity at issue is working, the inability to perform a particular job does not constitute a substantial limitation. Rather, the impairment must 'significantly' restrict an individual's ability to perform a wide range of jobs." *Id.* (quoting *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir. 1997)). While the restrictions placed on Plaintiff arguably encompass a wider range of activities, such as standing and sitting, these activities were only moderately restricted, *i.e.* she was unable to perform them for long periods of time. Against this backdrop, the Court concludes that, given the transitory nature of Plaintiff's injury as well as the types of restrictions which were placed on Plaintiff because of her injury, Plaintiff's impairment did not substantially limit one or more of her major life activities. Therefore, the evidence, viewed in the light most favorable to Plaintiff, does not support a finding that, at the times relevant to this case, Plaintiff suffered from a disability within

the meaning of the Rehabilitation Act.

Conclusion

For the foregoing reasons, the Court finds that there are no genuine issues of material fact, and thus the Defendant is entitled to summary judgment under Fed. R. Civ. P. 56(c).

February 18, 2010
Alexandria, Virginia

/s/
Liam O'Grady
**United States District Judge**